## COMMANDER MILLING CO. v. WESTINGHOUSE ELECTRIC & MANUFACTURING CO.

### No. 9766.

Circuit Court of Appeals, Eighth Circuit.

. . April 6, 1934.

James I. Best, of Minneapolis, Minn. (Eugene N. Best, Mortimer H. Boutelle, and Adrian H. David, all of Minneapolis, Minn., on the brief), for appellant.

Alfred A. Stoll, of Minneapolis, Minn. (Kingman, Cross, Morley & Cant and Harold G. Cant, all of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges. .

BOOTH, Circuit Judge.

This is an appeal from a judgment in a law action. It involves primarily questions of pleading and practice.

The action was brought by appellee as plaintiff to recover the reasonable value of labor, services, and material furnished to defendant by plaintiff in connection with the repair of a certain turbine which was install- • ed in a mill owned by defendant.

There were seven causes of action set up in the complaint, each covering a separate occasion on which labor, services, and material were furnished; the total period of time extending from the beginning of January, 1931, to about the 16th of September, 1931.

Defendant answered, admitting the furnishing of the labor and materials in each cause of action, but denying the value thereof.

Defendant also set up to each cause of action a special defense not specifically named, but which defendant refers to as a defense in recoupment, and which we think is properly so called. See Hoppman v. Persha (Minn.) 252 N. W. 229. This defense in recoupment alleged in general terms that the turbine was of plaintiff's manufacture; that it had been originally installed in the mill by plaintiff for the purpose of supplying power in the operations of the mill; that the turbine had been furnished and installed upon a warranty by plaintiff that it would fulfill the requirements of the mill in operation; that it had failed to do so; that defendant had made repeated complaints to plaintiff relative to the inadequacy of the turbine; that plaintiff had repeatedly assured defendant that the turbine could be made to fulfill its required functions; that the labor and materials set out in each of the causes of action were furnished in the attempt by plaintiff to make good its assurance as to the turbine; that the attempts failed, the services and materials were worthless, and the turbine was finally scrapped by defendant.

The defendant also set up in its answer a counterclaim which, broadly speaking, is similar to the recoupment defense, in that it is based upon alleged breaches of warranty; but some of the warranties and breaches are alleged to have been made prior to 1931, the year in which the labor and materials mentioned in the complaint were furnished. This counterclaim made it clear that, when·the defendant acquired the mill, the turbine was already installed therein, and that the original warranty was made at the time of such installation; that is, prior to the date when defendant bought the mill.

To this answer plaintiff filed a motion for a bill of particulars, but at the end of the motion added: "And plaintiff, in the event that said motion for bill of further particulars is denied, moves the court for an order directing the defendant to make his answer and counterclaim more definite and certain in

respect to the matters hereinbefore particularly set forth."

The court denied the motion for a bill of particulars as not appropriate under local practice, but granted the motion to make more definite and certain, stating in the order as follows: "Without taking the time to analyze and criticize the answer it is my opinion that to the end that the plaintiff may know how to prepare for trial this motion should be granted in full."

This motion of plaintiff that defendant make its answer more definite and certain specified some twenty-eight points in respect to which information was desired. Eight of these referred to the recoupment defense; twenty to the counterclaim. In the interest of economy of time and labor, we confine ourselves to the eight referring to the recoupment defense.

These eight points are subdivided, making a total of twenty items, in respect to which information was demanded as to this recoupment defense. The recoupment defense is set out in the margin.[1] (The parentheses and numbers are supplied by us.)

The parentheses numbered from 1 to 8 in the recoupment defense indicate the eight points toward which the motion of defendant was directed. The particulars demanded by the motion are also set out in the margin.[2]

Notwithstanding that some of the partic-

---

[1] "Further answering such cause of action, defendant alleges the services and materials referred to in such cause of action were furnished under the following circumstances, viz.: The turbine referred to in said cause of action was a machine of plaintiff's manufacture, furnished, supplied and installed by plaintiff in such mill, for the purpose of supplying power in the operations of such mill; that such turbine was so furnished and installed upon and under (1. plaintiff's assurance and guaranty) that it would fulfill the requirements of such mill in operation; that such (2. turbine wholly failed to meet and fulfill the aforesaid assurance and guaranty) of plaintiff; proved worthless and defendant was in consequence (3. compelled to scrap the same) and furnish and provide a wholly different instrumentality for generating and supplying the power required for the operation of said mill; that the results last indicated were wholly and exclusively (4. due to the inadequacy of such turbine) and in no wise caused by anything for which defendant was directly or indirectly responsible; that responsive to (5. defendant's repeated complaints to plaintiff respecting (6. the insufficiency and inadequacy of such turbine), plaintiff, for a (7. valuable consideration), (8. repeatedly assured defendant such turbine could be made to fulfill its required functions.) That the services and materials alleged in plaintiff's complaint and each separate cause of action set forth therein, were furnished in connection with plaintiff's attempt to make good such assurances but that such assurances were not fulfilled; the services and materials were worthless and the turbine itself scrapped, as hereinabove alleged."

[2] Particulars:

### As to 1.

"The nature and extent of 'plaintiff's assurance and guaranty,' the date when made, the person, persons, or corporations to whom made, and if such assurance and guaranty was in writing, the production of a copy thereof."

### As to 2.

"The dates, nature, and manner in which the turbine 'wholly failed to meet and fulfill the aforesaid assurance and guaranty.'"

### As to 3.

"Approximate date when defendant was 'compelled to scrap the same.'"

### As to 4.

"To what extent, the respective dates, and the manner in which the ineffectiveness of the turbine was 'due to the inadequacy of such turbine.'"

### As to 5.

"The character and dates of 'defendant's repeated complaints to plaintiff respecting the insufficiency and inadequacy of such turbine.'"

### As to 6.

"The facts as to the 'insufficiency and inadequacy of such turbine,' and the respective dates when such facts developed."

### As to 7.

"The nature and character of 'the valuable consideration' and the date when such consideration was given."

### As to 8.

"The approximate dates when plaintiff 'repeatedly assured defendant that such turbine could be made to fulfill its required functions,' and the nature and character of such respective assurances."

ulars mentioned seemed to ask for information, not as to the meaning of the allegations in the recoupment defense, but rather as to what evidence would be produced to support them (see Lee v. Mpls. & St. Louis Railway Co., 34 Minn. 225, 226, 25 N. W. 399); yet defendant undertook to comply with the order by filing an amended answer on January 17, 1933. In so doing it recast the recoupment defense, dividing it into nine paragraphs and expanding the language in an endeavor to furnish the information demanded.

The counterclaim was also redrafted and expanded into twelve paragraphs and an exhibit.

None of the pleadings was verified.

To the amended answer plaintiff filed nineteen motions to strike out specified paragraphs of the answer. These paragraphs included eight of the nine paragraphs of the recoupment defense and eleven of the twelve paragraphs of the counterclaim, covering all of the vital paragraphs of both.

The court granted each of the nineteen motions to strike, thereby eliminating completely the recoupment defense and the counterclaim. A motion by defendant to again amend the answer by restating the paragraphs eliminated was denied. On the trial, plaintiff offered evidence in support of the allegations of its complaint; defendant took no part in the trial. Judgment was entered for plaintiff; defendant has appealed.

In passing, it may be noted that there was no contumacious refusal to obey the first order of the court. In a' memorandum attached to the second order, the court expressly stated that it believed counsel for defendant had been sincere in their endeavor to avoid the fault which the court found in the former answer.

The action being one at law, we assume that the so-called Conformity Act (28 USCA § 724) governs the scope and sufficiency of the pleadings.

Turning to the order striking out from the amended answer the recoupment defense and to the motions on which the order was based, we find that all nine of the paragraphs in the recoupment defense are attacked on the ground that they are vague and indefinite. Four are attacked on the ground that they are conclusions of law. Two are attacked on the ground that they are frivolous. One is attacked on the ground that it is sham.

It becomes advisable, therefore, to advert to the meaning of the terms "sham," "frivolous," "irrelevant," "vague and indefinite," and "conclusion of law," as they are used in Minnesota pleading and practice, and to the effect of pleadings so characterized.

In the margin will be found the relevant statutory provisions, and the definitions and explanations given by Mr. Dunnell, recognized as an authority on Minnesota pleading and practice.[3]

---

[3] Mason's Minnesota Statutes, 1927.

"Sec. 9259. *Sham and frivolous pleadings*—Sham, irrelevant, or frivolous answers, defences, or replies, and frivolous demurrers, may on motion be stricken out, or judgment rendered notwithstanding the same, as for want of answer or reply.

"Sec. 9267. *Irrelevant, redundant, and indefinite pleadings*—If irrelevant or redundant matter is inserted in a pleading, it may be stricken out on motion; and when a pleading is double, or does not conform to the statute, or when the allegations thereof are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may strike it out on motion, or require it to be amended."

Definition of Sham Pleading.

Dunnell's Minnesota Pleading, 1899.

"Sec. 635. A sham pleading is one that is. so palpably false that it presents no real issue for trial. The essence of a sham pleading is its fals'ty. Although such pleadings are generally introduced in bad faith for purposes of delay it is not necessary to prove that they were so introduced in the particular case. It is sufficient ·if it appears that the pleading is so palpably false that it presents no real issue for trial and the opposite party should therefore not be put to proof and the time of the court consumed in trying a merely fictitious issue. Courts sit and jurors are summoned to try real and not fictitious issues and it is a fraud upon them for a pleader to present such an issue by a palpably false pleading. Under the code as well as every system of pleading it is a rule that all pleadings should be true but it is 'to be observed that in general there is no means of enforcing it, because regularly there is no proper way of proving the falsehood of an allegation, till issue has been taken, and trial had upon it.' "

Dunnell's Minnesota Digest.

"Sec. 7657. *Definition and nature.*—A sham pleading is one which is false. It presents no real issue for trial and is presumed to have been interposed for delay or other unworthy purpose. It may be sham

Out of the multitude of Minnesota decisions bearing upon the meaning of these terms we select a few excerpts illustrative of the attitude taken by Minnesota courts.

In the case of Western Gravel Co. v. M. J. Nolan Co., 174 Minn. 315, 219 N. W. 148, 149, the court said: "A sham pleading is one that is false; and to justify the court in striking out a pleading as sham its falsity must be clear and indisputable. Every reasonable doubt must be resolved in favor of the pleading. Where there is a dispute in the affidavits as to the facts upon which the answer must rest, it cannot be said that its falsity is clear and indisputable. Upon such motion the duty of the court is to determine whether there is an issue to try, not to try the issue."

In the case of Bank of Richards, Mo. v. Sheasgreen, 153 Minn. 363, 190 N. W. 484, the court said: "A sham answer is one sufficient on its face, but so clearly and indisputably false that it presents no real issue of fact to be determined by a trial. Bad faith, however, is not necessary. * * * The falsity of a pleading alleged to be sham may be established by affidavit. * * * On a motion to strike out an answer as sham, it is for the court 'to determine whether there is an issue to try, not to try the issue.' * * * An answer will be stricken out as sham only when it is clear and undisputed that the alleged defense is wholly unsupported by facts."

In Investors' Security Co. v. Bohanon, 168 Minn. 471, 210 N. W. 590, 591, the court said: "A sham answer is one good in form though interposed in good faith and in the belief in its truth."

### Frivolous Answer or Reply.

Dunnell's Minnesota Pleading.

"Sec. 654. A frivolous answer or reply is one which on its face is so manifestly insufficient as a defence that the court upon bare inspection can determine it without argument."

Dunnell's Minnesota Digest.

"Sec. 7668. *Answer*—A frivolous answer is one which is so glaringly insufficient as a defence that the court can determine its insufficiency upon bare inspection, without argument."

### Irrelevant Pleadings.

Dunnell's Minnesota Pleading.

"Sec. 650. An irrelevant pleading is one which has no substantial relation to the controversy between the parties to the suit. An allegation is irrelevant when the issue formed by its denial can have no connection with nor effect upon the cause of action."

Dunnell's Minnesota Digest.

"Sec. 7652. *Definition*—An irrelevant allegation is one which has no material relation to the case—one which does not form or tender any material issue."

### Indefinite Pleadings.

Dunnell's Minnesota Pleading.

"Sec. 660. The facts constituting a cause of action or defence must be set forth with certainty in order that they may be clearly understood by the court and the opposite party and their denial give rise to a sharply defined issue. A violation of this fundamental requirement of pleading is termed indefiniteness and renders the pleading subject to be stricken out or made more definite and certain on motion. There is no clear line of demarcation between indefiniteness and insufficiency. The one shades off into the other so that between what is clearly mere indefiniteness and what is clearly insufficiency there is a debatable territory within which cases are determined by the mental temper of the individual judge. No more than reasonable certainty is required. To require more would often prevent any statement of a cause of action and would impose an unreasonable burden upon the pleader. Upon a motion to make more definite and certain or to strike out it is for the court to consider whether the pleader has been as definite and certain as in the nature of the case could reasonably be expected of him. No general rule can be laid down except that a pleading is subject to such a motion only where its allegations are so indefinite that the precise nature of the charge or defence is not apparent."

Dunnell's Minnesota Digest.

"Sec. 7646. *In general*—The facts constituting a cause of action or defence must be alleged with certainty, but no more than reasonable certainty is required. The requisite degree of certainty necessarily depends upon the nature of the cause of action or defence and the circumstances of the particular case. No general rule can be laid down except that a party may be required on motion to make his allegations more definite and certain when they are so indefinite that the precise nature of his cause of action or defence is not apparent. To justify such a motion the indefiniteness must appear on the face of the pleading, and not relate to the evidence by which the allegations may be proved on the trial. A party cannot be required to plead his evidence. A motion to make more definite and certain or to strike out cannot be allowed to take the place of a demurrer."

but false in fact. An answer may be stricken as sham where it appears that there is no substantial ground for asserting the existence of the facts constituting the alleged defense."

In Bronzin Holding Co. v. McGee, 166 Minn. 129, 207 N. W. 199, 200, the court said: "An answer is frivolous when the insufficiency as a defense of the facts which it pleads is determinable immediately upon inspection."

In Cairns v. Lewis, 169 Minn. 156, 210 N. W. 885, 886, the court said: "We have said that a frivolous answer is one which does not present a defense, in any view of the facts pleaded, * * * and that it is one which does not contain any defense to any part of the plaintiff's cause of action, the insufficiency of the answer being so glaring that the court can determine it, upon a bare inspection without argument."

In First National Bank v. Lang, 94 Minn. 261, 102 N. W. 700, 701, the court said: "But where the falsity of the essential facts of a pleading is certainly and indisputably shown, especially when they fail in legal sufficiency, the courts will not permit that pleading to delay or obstruct the administration of justice, but will, on motion, strike it out as sham and frivolous."

In Morton v. Jackson, 2 Minn. 219 (Gil. 180), it was held that "an irrelevant answer may be both good in form, and true in fact; but have no relation to the cause."

In Dennis v. Nelson, 55 Minn. 144, 56 N. W. 589, it was held that an answer setting forth only conclusions of law may be treated as irrelevant, and may be stricken out on motion.

In Fagerstrom v. Rappaport, 176 Minn. 257, 223 N. W. 142, 143, the court said (quoting from Morton v. Jackson, supra): "An irrelevant pleading is one which has no substantial relation to the controversy between the parties to the suit."

In Whelan v. County of Sibley, 28 Minn. 80, page 84, 9 N. W. 175, the court said: "The objection that a pleading is indefinite or uncertain for the purpose of a motion to strike out can be made only when the allegations are so confused that what facts are intended to be charged is not apparent, or it it not apparent upon what facts alleged the party relies to sustain the action or defence."

In the case of American Book Co. v. Kingdom Pub. Co., 71 Minn. 363, 73 N. W. 1089, 1091, the court said: "If the court can see the meaning of the different allegations, and the cause of action or the defense intended to be set forth by them, the pleading is not indefinite. Nor can it be pronounced uncertain if the nature of the charge or of the defense is apparent."

As to pleading conclusions of law, the clear statement of Judge Mitchell in the case of Clark v. Chicago, Milwaukee & St. Paul Ry. Co., 28 Minn. 69, 9 N. W. 75, will be sufficient. He said (page 71 of 28 Minn., 9 N. W. 75): "It is, of course, an elementary rule of pleading that facts, and not mere conclusions of law, are to be pleaded. But this rule does not limit the pleader to the statement of pure matters of fact, unmixed with any matter of law. When a pleader alleges title to or ownership of property, or the execution of a deed in the usual form, these are not statements of pure fact. They are all conclusions from certain probative or evidential facts not stated. They are in part conclusions of law and in part statements of facts, or rather the ultimate facts drawn from these probative or evidential facts not stated; yet these forms are universally held to be good pleading. Some latitude must therefore be given to the term 'facts,' when used in a rule of pleading. It must of necessity include many allegations which are mixed conclusions of law and statements of fact, otherwise pleadings would become intolerably prolix, and mere statements of the evidence. Hence, it has become a rule of pleading that while it is not allowable to allege a mere conclusion of law containing no element of fact, yet it is proper, not only to plead the ultimate fact inferable from certain other facts, but also to plead anything which, according to the common and ordinary use of language, amounts to a mixed statement of fact, and of a legal conclusion. It may not be possible to formulate a definition that will always describe what is a mere conclusion of law, so as to distinguish it from a pleadable, ultimate fact, or that will define how great an infusion of conclusions of law will be allowed to enter into the composition of a pleadable fact. Precedent and analogy are our only guides."

In the recoupment defense of the amended answer, filed January 17, 1933, are contained allegations substantially as follows: (1) That the turbine referred to in plaintiff's causes of action was of the plaintiff's manufacture and supplied by plaintiff in the summer of 1914 to the corporation Yerxa, Andrews, Thurston & Co., with an oral warranty that it would fulfill the requirements of the mill in question as to motive power. (2) That defendant bought the mill with the turbine from Yerxa, Andrews, Thurston & Co., in March, 1922. (3) That after such purchase the turbine failed to work, causing the mill to shut down for lack of motive pow-

er one or more times each year. (4) That at the time of each of such shut-downs, defendant orally notified plaintiff, and that plaintiff sent experts to investigate and report as to the exact nature of the trouble. (5) That about January 1, 1931, one of such breakdowns occurred, plaintiff was orally notified of the same and sent experts to ascertain the cause; that plaintiff then assured defendant that the turbine was adequate and sufficient for said mill, and that, if defendant would permit plaintiff to make certain specified repairs on said turbine, plaintiff orally guaranteed defendant that it would have no trouble with said turbine and would not be forced to shut down because of the inability of said turbine to function properly; that in reliance on said promise and guaranty, defendant ordered the work and materials specified in plaintiff's first cause of action; and that in reliance on similar promises and guaranties made by plaintiff to defendant at about the dates of the first items of work performed by plaintiff for defendant, as set out in the other causes of action, defendant ordered from plaintiff the work and materials set out in such other causes of action. (6) That after plaintiff had made the repairs set out in each of said causes of action, nevertheless the turbine failed to work and to furnish sufficient power to run the mill, and that by reason of such failures of said turbine the said mill was forced to shut down on the following dates (a large number of dates is given, running from January to December, 1931). (7) That the turbine and the repairs thereon made by plaintiff proved worthless, and defendant was compelled to scrap the turbine and provide other means for supplying power, on or about January 4, 1932. (8) The breakdowns mentioned were due exclusively to the failure by plaintiff to fulfill its promises and guaranties. (9) That the services and materials set out in plaintiff's complaint were of no value. (10) That the said turbine during all of the times hereinbefore set forth was under the supervision of the plaintiff. (11) That the various repairs necessary to be made were attempted to be made by the plaintiff. (12) That the various technical and engineering definitions of each of the particular causes of the various breakdowns are known to the plaintiff and the data concerning which are in plaintiff's possession rather than in the possession of this answering defendant, as is the exact technical and engineering definitions of the various items of repair for said turbine; the defendant being in the milling business only, and not being familiar with the technical niceties of electrical turbines,

and the defendant knowing generally that the turbine would not operate at all on the times hereinabove specified.

When the allegations of the recoupment defense are examined in the light of the foregoing authorities, we think there can be no doubt that the allegations were amply sufficient to apprise plaintiff of the nature of the defense, and that there could be no surprise on that score. We cannot say that any of the allegations were indisputably false, or that they were lacking in a substantial relation to the controversy, or that they were obscure in meaning and such that the nature of the defense was not apparent, or that they were mere conclusions of law containing no element of fact.

A word may be added as to one or two of the allegations. It was alleged that the original warranty was made to Yerxa, Andrews, Thurston & Co., the then owners of the mill. The ground on which this was stricken out was that defendant was not a party or privy to such alleged warranty. It does not appear that defendant was relying on this original warranty as a defense; moreover, the allegation might be material as laying the foundation for proof that plaintiff was acquainted both with the requirements of the mill as to power and with the capabilities of the turbine to supply power.

The allegations contained in the last paragraph of the recoupment defense (10, 11, and 12, supra), were stricken out on the ground, among others, that they were sham. Affidavits were offered by plaintiff in support of this ground of attack. We have examined the affidavits, but are of the opinion that they are wholly insufficient to demonstrate that the paragraph in question was false.

One of the points stressed in the memorandum of the trial judge is that plaintiff is left by defendant's answer without information as to the names of the persons by whom, and to whom, the warranties relied upon by defendant were made. This point is also dwelt upon in plaintiff's brief.

There are two answers to this suggestion: First, that no demand for the names of such persons was made as to any warranties relied upon by defendant; second, such demand, if made, would not have been properly granted under Minnesota practice so far as we are advised, even though the information sought might be of convenience to plaintiff. See Todd v. M. & St. L. Ry. Co., 37 Minn. 358, 35 N. W. 5; Lee v. M. & St. L. Ry. Co., supra.

What we have said in reference to the recoupment defense applies largely to a consid-

eration of the counterclaim set up in defendant's answer. The recoupment defense and the counterclaim are, broadly speaking, framed along the same general lines; and the sufficiency of both is to be tested by the same principles of pleading.

We think the court erred, under all the circumstances, in striking out from defendant's answer the paragraphs constituting the recoupment defense and those constituting the counterclaim.

The judgment is reversed, with directions to reinstate the paragraphs stricken out, and for further proceedings thereafter not inconsistent with the views herein expressed.